**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 06-cv-00088-REB-BNB

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

STANSBURY HOLDINGS CORPORATION,
ALDINE J. COFFMAN, JR.,
DENNIS R. STAAL, CPA,
RICHARD E. SELLERS, CPA, and,
SELLERS & ASSOCIATES P.C.,

    Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

**Blackburn, J.**

This matter is before me on **Defendant Aldine J. Coffman, Jr.'s Motion To Dismiss the Complaint Pursuant to F.R.Civ.P. 9(b) and 12(b)(6)** [#18], filed March 21, 2006. The plaintiff has filed a response, and the defendant has filed a reply. I deny the motion.[1]

## I. JURISDICTION

I have subject matter jurisdiction under **28 U.S.C. § 1331** and **15 U.S.C. §§ 77t, 77v(a), 78u(e),** and **78aa.**

---

[1] The issues raised by and inherent to the motion to dismiss are fully briefed, obviating the necessity of jurisdictional discovery, evidentiary hearing, or oral argument.

## II. STANDARD OF REVIEW

When ruling on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), I must determine whether the allegations set forth in the complaint, if true, are sufficient to state a claim within the meaning of Fed.R.Civ.P. 8(a). I must accept all well-pleaded allegations of the complaint as true. ***McDonald v. Kinder-Morgan, Inc.***, 287 F.3d 992, 997 (10th Cir. 2002). "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." ***Fernandez-Montes v. Allied Pilots Association***, 987 F.2d 278, 284 (5th Cir. 1993); **see also Ruiz v. McDonnell**, 299 F.3d 1173, 1181 (10th Cir. 2002) ("All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true."), ***cert. denied***, 538 U.S. 999 (2003). Thus, Rule 12(b)(6) requires dismissal if, taking all well-pleaded facts as true and construing them in the light most favorable to plaintiff, it is clear that he can prove no set of facts entitling him to relief. ***See Conley v. Gibson***, 355 U.S. 41, 45-46 (1957); ***Rocky Mountain Helicopters, Inc., v. Bell Helicopter Textron, Inc.***, 24 F.3d 125, 128 (10th Cir. 1994). In this case, the plaintiff's fraud claims also are subject to the pleading requirements of FED. R. CIV. P. 9(b).

## III.  BACKGROUND

This case is a civil enforcement action brought by the plaintiff, the United States Securities and Exchange Commission (SEC). During the time relevant to the claims alleged in the Complaint, defendant Aldine Coffman was the president and chief executive officer of Stansbury Holdings Corporation. The general tenor of the SEC's claims against Coffman is that Coffman, in his role as president and CEO of Stansbury, "defrauded investors by materially overstating Stansbury's assets in annual and quarterly reports filed with the Commission and in a private placement memorandum."

2

*Complaint*, ¶ 3.   The SEC alleges that Coffman and others materially overstated the value of Stansbury's mining assets.  Stansbury allegedly owned two key properties as its primary assets, the Hamilton property and the Dillon property.  According to the allegations in the Complaint, the facts known to Coffman demonstrated that these properties were worth far less than their reported values.  *Complaint*, ¶¶ 32-55. The SEC alleges that Coffman's actions violated various sections of the Securities Act of 1933, the Securities Exchange Act of 1934, and certain rules promulgated under those acts.  The SEC asserts eight claims against Coffman.

Coffman argues that the SEC's allegations in support of its fraud claims are not sufficiently specific to satisfy the pleading requirements of FED. R. CIV. P. 9(b).  He argues that the Complaint does not contain sufficient allegations of scienter or materiality.  Coffman argues also that the doctrine of collateral estoppel precludes the SEC from alleging that Coffman improperly reported inflated asset values for Stansbury.  Finally, Coffman argues that the allegations in the Complaint do not state a claim for falsification of books and records under § 13 of the Exchange Act, and do not state claims for aiding and abetting.

### IV.  FRAUD CLAIMS & PLEADING STANDARD OF FED. R. CIV. P. 9(b)

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." FED. R. CIV. P. 9(b).  The Tenth Circuit has held that "Rule 9(b) requires only the identification of the circumstances constituting fraud, and that it does not require any particularity in connection with an averment of intent, knowledge or condition of mind."  ***Schwartz v. Celestial Seasonings, Inc.***, 124 F.3d 1246, 1252 (10th Cir. 1997) (citing ***Seattle-First***

3

***Nat. Bank v. Carlstedt***, 800 F.2d 1008, 1011 (10th Cir. 1986)).  The complaint must set forth the time, place, and content of the false representation, the identity of the party making the false statements, and the consequences of the false statement.  *Id*. at 1252 (citing ***Lawrence Nat'l Bank v. Edmonds ( In re Edmonds )***, 924 F.2d 176, 180 (10th Cir.1991)).  In this case, the relevant consequence is the violation of certain provisions of the Exchange Act and the Securities Exchange Act.

### A.  Scienter Allegations

Coffman argues that the SEC's allegations of his scienter are inadequate.  In the context of the SEC's claims, scienter can be proven by showing either knowing or intentional misconduct or recklessness.  In the present context, recklessness is "'conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'"  ***City of Philadelphia v. Fleming Companies, Inc.***, 264 F.3d 1245, 1258 (10th Cir. 2001) (quoting ***Anixter v. Home-Stake Production Co.***, 77 F.3d 1215, 1232 (10th Cir. 1996)).  In a securities fraud case alleging non-disclosure of potentially material facts, the plaintiff can establish scienter by showing that 1) the defendant knew of the potentially material fact, and/or 2) the defendant knew that failure to reveal the potentially material fact likely would mislead investors.  *Id*. at 1261.

The SEC alleges that Coffman knew, or was reckless in not knowing, that Stansbury's key assets were worth far less than Coffman reported.  The reported value of the assets, and the facts that allegedly indicated that the assets were worth much less than reported, are alleged specifically in the complaint.  The SEC alleges that Coffman was aware of six specific events that substantially impaired the values of the

Hamilton and Dillon properties, and he knew that the value of the assets was impaired substantially by these events. *See, e.g., Complaint*, ¶¶ 41, 45, 49, 55. Coffman also allegedly knew that these two assets were Stansbury's primary assets. Of course, substantial impairment of a corporation's two primary assets is information that would be important to investors. The SEC's allegations are sufficient to support an inference that Coffman knew that failure to reveal the facts known to him likely would mislead investors.

I disagree with Coffman's assertion that the SEC's scienter allegations are based solely on a claim that Coffman knew that the accounting reflected in the reports executed by Coffman violated Generally Accepted Accounting Principles (GAAP). Whether Coffman knew of a purported violation of GAAP is not the lynchpin of the SEC's scienter allegations. Rather, the allegations indicating that Coffman knew of facts that indicated that Stansbury's key assets were worth much less than reported are sufficient to support the SEC's allegations of Coffman's scienter.

### B.  Materiality

Coffman argues also that the SEC's allegations do not demonstrate adequately the materiality of the alleged misrepresentations. A statement or omission is material if a reasonable investor would consider it important in determining whether to buy or sell stock, and if the statement or omission would have significantly altered the total mix of information available to current and potential investors. **City of Philadelphia v. Fleming Companies, Inc.**, 264 F.3d 1265.

The SEC has alleged that Coffman and others materially overstated the value of Stansbury's two primary assets. Coffman is alleged to have prepared and signed reports indicating that the Hamilton property was valued at 15 million dollars, and the

5

Dillon property at 3.7 to 4.2 million dollars. According to the allegations in the complaint, the facts known to Coffman demonstrated that these properties were worth far less than their reported values. *Complaint*, ¶¶ 32-55. According to the complaint, the Hamilton and Dillon properties represented between 75 and 99 percent of Stansbury's reported assets. Thus, the alleged over valuation of the two properties resulted in a substantial over valuation of Stansbury as a whole.

The fact that the allegations in the complaint do not indicate the precise size of the alleged overstatements of value does not mean that the allegations do not indicate that the alleged overstatements were material. The SEC alleges that Stansbury should have written off substantially all of the value of both properties based on the events described in the complaint. ¶¶ 35, 39. Compliance with GAAP is one issue in these valuations, but the events alleged in the complaint indicate that the valuation of these assets implicated concerns beyond compliance with GAAP. In short, the SEC alleges that Stansbury and Coffman reported that the Hamilton and Dillon properties had substantial value when they, in fact, had little, if any, value. The gravity of such a discrepancy goes well beyond a technical violation of GAAP.

Taking the allegations in the complaint as true, as I must, I can conclude only that a reasonable investor would consider information about the value of Stansbury's two key assets to be important in determining whether to buy or sell stock. The substantial overvaluation of these assets, as alleged in the Complaint, would significantly alter the total mix of information available to investors. Assuming the allegations in the complaint to be true, the SEC adequately has alleged the materiality of the misrepresentations allegedly made by Coffman.

## V.  COLLATERAL ESTOPPEL

Coffman argues that the doctrine of collateral estoppel precludes the SEC from asserting a claim based on its allegation that Coffman failed to adjust the value of the Dillon and Hamilton properties on Stansbury's records after foreclosure proceedings allegedly impaired the value of these properties.  Coffman claims that the SEC litigated a similar claim based on this theory in administrative proceedings against Stansbury.  Coffman says the SEC's claim was resolved against the SEC in the administrative proceedings.  The administrative ruling, Coffman claims, bars the SEC from pursuing this theory in this case.

Collateral estoppel applies when 1) the issue previously decided is identical to the one presented in the action in question; 2) the prior action has been fully adjudicated on the merits; 3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication; and 4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.  ***Matosantos Commercial Corp. v. Applebees Int'l., Inc.***, 245 F.3d 1203, 1207 (10th Cir. 2001).  Re-litigation of an issue of fact or law is precluded only when the earlier decision was necessary to the earlier judgment.  ***Allen v. McCurry***, 449 U.S. 90, 94 (1980); ***Montana v. U.S.***, 440 U.S. 147, 153 (1979).

Coffman relies on a decision issued in administrative proceedings by the SEC against Stansbury to support his collateral estoppel argument.  In those proceedings, the SEC alleged that Stansbury had 1)  failed to make certain periodic filings, as required by the securities laws; and 2) had made untrue statements of material fact, or omissions of material fact, in violation of the periodic reporting provisions of § 13(a) of the Exchange Act.  On these bases, the SEC sought suspension or revocation of the

7

registration of Stansbury's common stock.  The administrative decision resolving these claims is attached to Coffman's motion to dismiss as Exhibit B (Initial Decision).

In the Initial Decision, the administrative law judge noted that because"Stansbury's failure to file its periodic reports was uncontested, the parties agreed that the only issues to be addressed at a hearing would be Stansbury's plan for bringing itself into compliance and the appropriate sanction . . . ." *Initial Decision*, p. 2. The administrative law judge first outlined Stansbury's failure to file the required periodic reports, and concluded that these failures justified revocation of the registration of Stansbury's stock.  *Id.*, pp. 6-7.  The administrative law judge then described Stansbury's alleged misrepresentations and omissions in some detail.  *Id.*, pp. 7-9. However, he prefaced his description with the following statement:

> The allegations concerning Stansbury's material misrepresentations and omissions add nothing to the [SEC's] case.  Revocation is warranted by reason of the admitted reporting violations and the need to protect the investing public.  I discuss these charges only in the interest of completeness.

*Initial Decision*, p. 8.  Revocation of Stansbury's registration was the only relief granted in the Initial Decision.

It is abundantly clear that the conclusions of the Administrative Law Judge concerning Stansbury's alleged misrepresentations and omissions were not necessary to the administrative law judge's decision, as reflected in the Initial Decision.  Because those conclusions were not necessary to the decision, those conclusions do not carry a preclusive effect in this case.  Collateral estoppel does not preclude the SEC from asserting in this case a claim based on its allegation that Coffman failed to adjust the value of the Dillon and Hamilton properties on Stansbury's records after foreclosure proceedings allegedly impaired the value of these properties.

8

## VI.  § 13(b)(5) CLAIM

Coffman argues that the SEC's allegations are not sufficient to state a claim against him under § 13(b)(5) of the Exchange Act.  Section 13(b)(5), 15 U.S.C. § 78m(b)(5), provides that "(n)o person shall knowingly circumvent or knowingly fail to implement a system of internal accounting controls or knowingly falsify any book, record, or account described in paragraph (2)."  Under paragraph (2) of this section, Stansbury was required, *inter alia*, to keep books and records that "accurately and fairly reflect the transactions and dispositions of the assets of the issuer," and to maintain a system of internal accounting controls sufficient to provide various assurances, including assurance that "the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences."  § 13(b)(2).  This claim is not subject to the enhanced pleading standard of FED. R. CIV. P.  9.

The SEC alleges the Coffman falsely recorded, directly or indirectly, the value of Sansbury's assets in the books, records and accounts which Sansbury was required to maintain.  *Complaint*, ¶¶ 65-67.  The SEC alleges also that Coffman knowingly circumvented or failed to implement a system of internal accounting controls for Stansbury.  *Complaint*, ¶ 70.  Again, the SEC alleges that Stansbury and Coffman reported that the Hamilton and Dillon properties had substantial value when they, in fact, had little, if any, value.  These reports allegedly were made in books and records subject to the requirements of § 13(b)(5).  In its response to the motion to dismiss, the SEC says that Stansbury's quarterly and annual reports filed with the SEC, and the financial statements contained in those reports, are records covered by § 13.  *Response*, p. 12.  These allegations are sufficient to state a claim against Coffman

under § 13(b)(5).

Coffman argues that Sansbury's quarterly and annual reports filed with the SEC are not covered by § 13. I disagree. These reports are records of Stansbury subject to the requirements of § 13(b)(5). Coffman argues also that the requirements of § 13(b)(5) are limited to reports that reflect accounting for transactions or dispositions of assets, and that the accounting irregularities alleged by the SEC do not involve transactions or dispositions of assets. Again, I disagree. The books, records, and accounts regulated by § 13(b)(5) are described in § 13(b)(2). At least some of the events which allegedly impaired the value of the Hamilton and Dillon properties fall within the terms "transactions and dispositions," as used in § 13(b)(2)(A). Further, subsection 13(b)(2)(B) requires maintenance of a system of internal accounting controls which assures, *inter alia*, that "the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences." Of course, this requirement is part of the description of books, records, and accounts that are regulated by subsection (b)(5). Failure to maintain such a system violates § 13(b)(5). The SEC's allegations are sufficient to state a claim against Coffman under § 13(b)(5) of the Exchange Act.

## VII.  AIDING & ABETTING

Coffman argues that the SEC's allegations do not state a claim against him for aiding and abetting Stansbury's alleged violations of §§ 13(a)(1) and 13(b)(2) of the Exchange Act. Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e), controls aiding and abetting liability, and requires proof that Coffman knowingly provided substantial assistance to another person in violation of the provisions of the Exchange Act, or any rule issued thereunder. Coffman argues that the SEC has not sufficiently alleged that

10

he had actual knowledge of the incorrectness of Stansbury's reported financial results, of Stansbury's alleged failure to keep proper books and records, and of Stansbury's alleged failure to devise and maintain a system of internal accounting controls.

Coffman asserts that aiding and abetting liability under § 20(e) can be based only on allegations that he had actual knowledge of the incorrectness of Stansbury's reported financial results during the relevant times.  This SEC disputes this premise, arguing that recklessness is sufficient to establish aiding and abetting liability under § 20(e).  I need not resolve this dispute in order to resolve the motion to dismiss.  I conclude that the SEC sufficiently has alleged knowing violations by Coffman.

To establish aiding and abetting liability, the SEC must allege and prove: 1) a primary violation of the securities laws by another; 2) knowledge of the primary violation by Coffman; and 3) substantial assistance by Coffman in achieving the primary violation.  ***Anixter v. Home-Stake Production Co.*** 77 F.3d 1215, 1225 (10th Cir. 1996). Assuming, without deciding, that the SEC must allege actual knowledge, as opposed to recklessness, I conclude that the SEC's allegations are sufficient to support its aiding and abetting claim.  As discussed in Section IV. A, above, Coffman's alleged knowledge of specific facts that indicated that Stansbury's key assets were worth much less than reported are sufficient to support the SEC's allegations of Coffman's scienter. These allegations also are sufficient to support the SEC's aiding and abetting claims because they sufficiently allege that Coffman knew of the primary violations, all of which are based on the alleged over-valuation of Stansbury's primary assets, and provided substantial assistance to Stansbury in achieving those violations.  The SEC's allegations are sufficient to state aiding and abetting claims against Coffman.

## VIII. ORDERS

**THEREFORE, IT IS ORDERED** that **Defendant Aldine J. Coffman, Jr.'s Motion To Dismiss the Complaint Pursuant to F.R.Civ.P. 9(b) and 112(b)(6) [#18]**, filed March 21, 2006, is **DENIED**.

Dated February 20, 2007, at Denver, Colorado.

BY THE COURT:

s/ Robert E. Blackburn
Robert E. Blackburn
United States District Judge